**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Criminal Action No. 23-cr-00420-DDD

UNITED STATES OF AMERICA,

      Plaintiff,

v.

SHAWN BURKET,

      Defendant.

---

**ORDER DENYING DEFENDANT'S SECOND EMERGENCY MOTION**
**FOR TEMPORARY RELEASE (ECF No. 24)**

---

On January 11, 2024, this court denied Defendant's Emergency Motion for Temporary Release to Attend Funeral Pursuant to 18 U.S.C. § 3142(i), in which the defendant sought temporary release from custody to attend his mother's funeral in Grand Junction, Colorado. ECF No. 23 (Order denying motion). Late the following afternoon, on Friday, January 12, the defendant filed a second motion for emergency relief, ECF No. 24 ("Second Motion"), which has been referred to this court. In the Second Motion, the defendant asks to be released for an eight-hour period so that he can attend his mother's interment in a cemetery in Grand Junction on January 17, 2024. The relief sought in the Second Motion is opposed by the United States Attorney's Office and the U.S. Probation Office. After careful consideration of the Second Motion, the position of the U.S. Probation Office, and the entire docket, the court finds that the defendant has failed to carry his burden to show that he should be granted temporary release and **DENIES** the Second Motion.

1

I.      **ANALYSIS**

The provision of the Bail Reform Act governing the defendant's request for temporary release states:

> The judicial officer *may* . . . permit the temporary release of the person, in the custody of a United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason.

18 U.S.C. § 3142(i) (emphasis added). "In moving for temporary release, the burden rests with Defendant to demonstrate that such release is warranted." *United States v. Wood*, No. 21-385-23, 2022 WL 1689511, at *1 (W.D. Pa. May 26, 2022) (citing *United States. v. Wilburn*, 2:18-cr-115, 2020 WL 1899146, at *2 (W.D. Pa. Apr. 17, 2020)).[1]

As set forth in the statute, the defendant must demonstrate the presence of two factors: (1) that his temporary release is necessary for the preparation of his defense or another compelling reason, and (2) that he can be released to the custody of the United States marshal or another appropriate person. *See* § 3142(i); *see also, e.g.*, *United States v. Williams*, 2:20-cr-81, 2020 WL 4431565, at *2 (W.D. Pa. July 31, 2020) (defendant seeking temporary release bears the burden to show both factors); *United States v. Terrone*, 454 F. Supp. 3d 1009, 1018 (D. Nev. 2020) (same). The defendant must "present an individualized argument why temporary release is appropriate; generalized or speculative arguments are insufficient." *Williams*, 2020 WL 4431565, at *2 (citing *United States v. Lee*, No. 19-cr-298, 2020 WL 1541049, at *6 (D.D.C.

---

[1] This court has located no cases in this District that have specifically analyzed the application of § 3142(i) in the context now presented, and the defendant has cited to none. However, as discussed in this order, many cases from other jurisdictions have addressed the issue in similar circumstances.

Mar. 30, 2020)). And "the relief authorized by Section 3142(i) is to be used '*sparingly*.'" *United States v. Toledo Pardo*, No. 2:22-CR-00151-LK, 2023 WL 4641055, at *1 (W.D. Wash. July 20, 2023) (denying prisoner's motion for a five-hour temporary release "based on his desire to attend his cousin's funeral to honor him and grieve with his family") (quotation omitted) (emphasis added).

A.      **"Another Compelling Reason"**

As to the first factor, the defendant does not argue that temporary release is necessary to prepare his defense, and so this court must determine whether he has established that temporary release is necessary for "another compelling reason." The court finds that he has not.

The defendant asserts that "the death of [his] mother *is* a compelling reason." Second Motion at 3 (emphasis in original). While the court is sympathetic to the defendant's situation, under the law, his personal interest is not the court's primary consideration. "[A]n examination of the defendant's dangerousness and risk of flight is appropriate when deciding a temporary release motion." *Williams*, 2020 WL 4431565, at *2 ("When the court interprets 'compelling reason', it should do so against the backdrop of the Bail Reform Act as a whole.") (citing *Wilburn*, 2020 WL 1899146, at *11 ("[I]f there is anything that permeates the Bail Reform Act, it is Congress' intent that courts consider the defendant's dangerousness and risk of flight when making detention determinations. . . . It would strike the Court as odd, then, that § 3142(i)'s 'compelling reason' prong would ignore a defendant's danger or flight risk.")). *See also, e.g.*, *United States v. Keo*, No. 22-40061-HLT, 2023 WL 7161159, at *10 (D. Kan. Oct. 31, 2023) ("In the context of analyzing release for 'another compelling reason' under § 3142(i), courts still consider the underlying reasons for the original detention order."); *Toledo Pardo*, 2023 WL

4641055, at *1 ("As with any motion to revisit detention, the original grounds for detention remain a factor in the court's analysis.") (cleaned up).

Here, the defendant has not persuasively addressed the factors of dangerousness and risk of flight. A careful examination of these factors strongly counsels against his temporary release. The defendant is charged in the instant federal case with possession with intent to distribute fentanyl, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(vi), and possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). If convicted on these charges, the defendant faces penalties that include (on the possession-with-intent-to-distribute charge alone) a minimum of ten years and up to life imprisonment. The defendant is unquestionably presumed innocent of these charges, but that presumption does not negate the court's obligation to examine the record that has brought the defendant to this point. As the pending felon-in-possession charge indicates, the current federal charges are but the most recent in the defendant's lengthy criminal history.

The defendant has nine felony and fourteen misdemeanor convictions in Colorado state courts. His prior felony convictions include convictions for felony menacing-real/simulated weapon; intent to cause serious bodily injury-heat of passion; criminal conspiracy-theft (in violation of Colo. Rev. Stat. § 18-4-401); possession of burglary tools; weapons possession by a previous offender; and charges involving controlled substances, including conspiracy and possession with intent to distribute controlled substances. The court's analysis here is further informed by the fact that the majority of these state convictions, including the felony convictions, stem from conduct charged in Mesa County, Colorado (of which Grand Junction is the county seat)—the very location where the defendant seeks to be temporarily released and where he may

4

retain connections. In evaluating the defendant's request for temporary release, the court also considers the defendant's history of non-compliance with conditions imposed by other courts. The defendant has incurred new charges while on supervision. His criminal history reflects multiple failures to appear. He has had at least five terms of probation, parole, or community corrections revoked for non-compliance.

On November 17, 2023, the defendant waived his right to contest detention in this case. ECF No. 12. The court found, by that waiver, that the presumption in favor of detention stood unrebutted and that there was "probable cause to believe defendant committed an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act[.]" *Id.*

Considering the totality of this information, the court finds that the proposal to allow the defendant to travel several hundred miles from his current place of confinement in Clear Creek County Jail to a site in relatively close proximity to many of his crimes of conviction—unescorted by law enforcement personnel or another person who has been vetted and approved by Pretrial Services—risks the defendant's flight and the safety of other persons in the community. The court therefore finds that the defendant has **not** demonstrated that attending his mother's burial service is a compelling reason warranting temporary release under § 3142(i). *See, e.g.*, *Wood*, 2022 WL 1689511, at *1 (finding that attending an aunt's funeral was not a compelling reason under § 3142(i) where the defendant was charged with a drug trafficking offense carrying a term of not less than ten years and up to life imprisonment; had a history of prior drug-related and firearms offenses; had committed multiple new offenses while on bail or probation; and had a history of failures to appear for court); *United States v. Esquibel*, No. 1:15-

5

cr-02731-JCH, 2023 WL 6481140, at *1-2 (D.N.M. Oct. 5, 2023) (in denying defendant's request for a ten-hour release from custody to attend his father's funeral, recognizing that "many detained defendants lose loved ones while in custody," and holding that "[t]emporary release to attend funerals would drastically increase the use of § 3142(i) and is not a 'compelling' reason that justifies temporary release under that statute").[2]

## B. "Another Appropriate Person"

The court further finds the defendant has failed to establish that he has satisfied the second factor of § 3142(i): that he will be released to the custody of "another appropriate person." The defendant's brother, his proposed escort on the approximately 400-mile round-trip between Georgetown, Colorado (the location of Clear Creek County Jail) and Grand Junction, may be well-intentioned, responsible, and may indeed have "no criminal history." Second Motion at 2. But he has not been vetted by Pretrial Services and, given the timeframe in which

---

[2] *Accord, e.g.*, *United States v. Merayo*, No. 1:21-CR-00740-MV, 2021 WL 6134683, at *1 (D.N.M. Dec. 29, 2021) (finding that attending a grandmother's funeral was not a compelling reason for temporary release under § 3142(i): "Courts typically have granted relief under § 3142(i) only 'sparingly to permit a defendant's release where, for example, he is suffering from a terminal illness or serious injuries.'" (quoting *United States v. Hamilton*, 612 F. Supp. 3d 112, 115 (E.D.N.Y. 2020)); *United States v. Jackson*, No. 15-40065-01-DDC, 2020 WL 7626539, at *1 (D. Kan. Dec. 22, 2020) ("The court fully understands Mr. Jackson's desire to grieve his grandfather alongside other family members. And in ordinary circumstances, attending a beloved family member's funeral would qualify as a compelling event. But the court must deny the motion because Mr. Jackson's own conduct renders him untrustworthy for temporary release."); *United States v. Navarro*, No. 2:19-cr-00056-JCM-DJA, 2020 WL 5877816, at *1-2 (D. Nev. Oct. 2, 2020) (rejecting defendant's argument that the death of his father and "attendance at the subsequent funeral is such a unique and compelling circumstance that § 3142(i) warrants release," in light of the defendant's record of multiple felony convictions, arrests for violations of the terms of release, and his current charges of committing, while on probation, crimes that included distributing and possessing with intent to distribute controlled substances).

the defendant compels this court to act,[3] there is not time for him to be vetted. In this regard, the court notes its respectful disagreement with the defendant's assertion that "[t]he *only* question [under § 3142] is whether there is a compelling reason." *Id.* at 3 (emphasis added). The court also must determine whether the defendant has shown that his brother is "an appropriate person" under the statute. As to this question, the point is not whether "a hearing or formal advisement of conditions" to the defendant's brother is *required*, *see id.*, but whether the defendant has met his burden to show that he may safely be assigned to the custody of his brother. Based on the record now, the defendant has not made that showing.

Even with a proper vetting, of course, the defendant's brother might not be shown to be an appropriate person to safely transport the defendant over a large swath of Colorado *and* to maintain control over the defendant in a community the defendant knows well, where he has committed crimes in the past, and in which he may maintain dangerous connections. *See Wood*, 2022 WL 1689511, at *2 ("the mere fact that Defendant's sister is willing to transport him to and from the funeral service and serve as his custodian does not mean that she could adequately supervise an individual who is charged with an extremely serious drug trafficking offense and who has a criminal history as outlined above"). But certainly the court cannot conclude, on the existing record, that the defendant has shown that his brother is an "appropriate person" to whom he may be safely released, even on a temporary basis.

For these reasons, the court finds that the defendant has not met his burden to show that

---

[3] The court observes that the dates of Ms. Lodema's funeral and burial service were announced on December 30, 2023. *See* Lodema Brenton Obituary - Legacy Funeral Home - 2023 (12/30/2023 obituary, including announcement of 1/17/2024 burial service).

he would be released to the custody of "another appropriate person."

### C.   Logistical Impediments

The conclusion that the defendant has satisfied neither factor under § 3142(i) disposes of the question before the court. However, in the interest of providing a complete record here, the court further observes that there remain many logistical impediments, as discussed in the court's previous order denying the defendant's request to attend his mother's funeral.

The defendant posits that he could be outfitted with a GPS ankle monitor very early in the morning of January 17 at the Clear Creek County Jail in Georgetown. *See* Second Motion at 2. This court is not inclined to place on Pretrial Services the burden of traveling from Denver to Georgetown, and it is also not clear that GPS placement—which requires dependable internet access and possible replacement or repairs of parts for the monitoring device, according to Pretrial Services—could be successfully accomplished at a location more than forty miles distant from Denver. Neither is the court persuaded by the defendant's reference to another case, *United States v. Galen*, No. 15-cr-00392-RBJ (D. Colo.), in which the court directed that Pretrial Services place an ankle monitor on a prisoner housed at the Federal Detention Center in Englewood, Colorado—a facility located about twelve miles west of downtown Denver. This court has reviewed the docket in *Galen* and finds the circumstances there quite different. In that case, Pretrial Services was not required to travel a significant distance to the prisoner's place of confinement. Importantly, too, the prisoner was confined in a federal facility and was returned that evening to the same federal facility. This is a critical distinction from the case at hand, where the defendant is incarcerated at a county jail and would be required to self-surrender to that county facility upon his return from Grand Junction.

Pretrial Services represents that the U.S. Marshals Service ("USMS") has advised Pretrial Services that a contracted detention facility like Clear Creek County Jail ordinarily will not accept the self-surrender of a federal prisoner, and the defendant's probable return to the jail after-hours on January 17 is an additional complicating factor.[4] USMS personnel would not be available to Jail officials after normal business hours. Put simply, there is a risk the defendant might not be accepted back to the Clear Creek County Jail. That is a risk this court declines to accept, particularly in light of the significant evidence indicating that, if temporarily released as he proposes, the defendant would pose a flight risk and a danger to the community.

## II.    CONCLUSION

For the foregoing reasons, the court **DENIES** the defendant's Second Emergency Motion for Temporary Release to Attend Funeral Pursuant to 18 U.S.C. § 3142(i) (ECF No. 24).

DATED: January 15, 2024                    BY THE COURT:

_____
Susan Prose
United States Magistrate Judge

---

[4] It appears very unlikely to this court that the defendant could attend his mother's interment at 1:00 p.m. in Grand Junction and return to the jail—on the opposite side of the Rocky Mountains on a winter day when snow is forecast—before 5:00 p.m.